# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ALFONZA HARDY GREENHILL,** ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> ) <br> **HAROLD W. CLARKE, et al.,** ) <br> Defendants ) | Civil Action No.: 7:16cv00068 <br><br> **REPORT AND** <br> **RECOMMENDATION** <br> By: P<small>AMELA</small> M<small>EADE</small> S<small>ARGENT</small> <br> United States Magistrate Judge |

The pro se plaintiff, Alfonza Hardy Greenhill, ("Greenhill"), an inmate incarcerated at Red Onion State Prison, ("Red Onion"), brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, against the defendants, Harold W. Clarke, Director of the Virginia Department of Corrections, ("VDOC"), A. David Robinson, Chief of Corrections Operations for the VDOC, and Earl Barksdale, Warden of Red Onion. Greenhill asserts that restrictive living conditions in long-term administrative segregation interfere with his ability to exercise his Muslim religious beliefs related to his participation in the weekly service know as Jum'ah, as well as wearing a beard and maintaining a religious diet.

Greenhill has filed two motions, (Docket Item Nos. 4, 35) ("Motions"), seeking, among other relief, preliminary injunctive relief ordering prison officials to provide him with a television for viewing a weekly broadcast of the Jum'ah service. This court originally denied Greenhill's request for preliminary injunctive relief, and Greenhill noted an interlocutory appeal. The United States Court of

-1-

Case 7:16-cv-00068-JPJ-RSB   Document 41   Filed 03/20/17   Page 1 of 11   Pageid#: 417

Appeals for the Fourth Circuit remanded the case for further proceedings on Greenhill's request for preliminary injunctive relief. On remand, Greenhill's request for preliminary injunctive relief is before the undersigned magistrate judge on referral pursuant to 28 U.S.C. § 636(b)(1)(B) for a report setting forth appropriate findings of fact and conclusions of law and recommended disposition.

*I. Facts*

In his sworn Complaint, (Docket Item No. 1), Greenhill claims that he has been a practicing Sufi Muslim since 2000. He claims that his religion requires "strict adherence, outwardly and inwardly, to the Sunnah (ways, habits, traditions) of the Prophet Muhammad…, his Sahabah (companions) and Sufi Masters." He states that his religion obligates him to be present bodily or visually at the weekly Friday Islamic gathering known as Jum'ah. He states that Jum'ah is a central tenet of Islam and that "any adult Muslim male who is absent therefrom incurs a terrible sin and is deprived of the opportunity to acquire many blessings."

In his Complaint, Greenhill concedes that he is housed in the S security level or segregation housing at Red Onion. He states that, as an inmate housed in segregation, he is confined to his cell for 23 hours a day and is only released from his cell to be escorted in handcuffs and leg shackles to an outside recreation cage, shower or medical department. As a segregation inmate, Greenhill is not allowed to attend weekly Jum'ah services. He states that Red Onion broadcasts a videotape of Jum'ah services every week for inmates in general population and segregation housing. According to Greenhill, the only segregation inmates who may view this service are those who can afford to purchase their own television from the commissary. Greenhill states that one of these televisions costs $212 and, as an

indigent prisoner, he cannot afford to purchase a television. Therefore, he argues, he is precluded from visually accessing and participating in the weekly Jum'ah services. He claims that this preclusion places a substantial burden on his free exercise of his religious beliefs as a Sufi Muslim.

Greenhill further alleges that, because he refuses for religious reasons to comply with the VDOC's policy limiting beards to a quarter of an inch in length, he is not eligible to obtain a prison job, which would allow him to earn money to buy a personal television from the commissary. Greenhill states that there are no communal televisions in Red Onion's segregation pods, although there are cable and electrical outlets on the walls where there used to be communal televisions.

Greenhill has provided the court with a copy of VDOC Operating Procedure, ("OP"), 841.3, Offender Religious Programs, effective July 1, 2015. (Docket Item No. 4-3.) This OP establishes "protocols to provide reasonable opportunities for offenders incarcerated in Department of Corrections facilities to voluntarily pursue religious beliefs and practices subject to concerns regarding facility security, safety, order, space and resources." This OP does not, however, address how inmates held in segregation can participate in religious services.

In response to the Motions, the defendants have filed the Affidavit of A. Duncan, the Unit Manager of C-Building at Red Onion. (Docket Item No. 40-1.) According to Duncan, Greenhill is serving a 15-year, 40-day sentence. Since Greenhill's arrival at Red Onion in 2013, he has received 10 institutional disciplinary convictions. Duncan states that segregation at Red Onion is "utilized for the protective custody and/or custodial management of offenders and is not punitive." She stated that VDOC OP 861.3, Special Housing, which she attached to

-3-

Case 7:16-cv-00068-JPJ-RSB   Document 41   Filed 03/20/17   Page 3 of 11   Pageid#: 419

her Affidavit, sets forth the conditions of segregation. Duncan stated that offenders assigned to a segregated housing assignment are limited in their out-of-cell activities, and they may not attend group religious services. According to Duncan, these inmates may practice their faith in their cells and may request that the Chaplain visit their cells for private worship and counsel.

Duncan states that Greenhill has been in segregation at Red Onion since September 4, 2015, after receiving institutional disciplinary charges. Operating Procedure 830.A establishes procedures for the Segregation Reduction Step-Down Program, ("Step-Down Program"), at Red Onion. According to Duncan, the Step-Down Program is an "incentive-based housing program which creates a pathway for offenders to step-down to lower security levels in a manner that maintains public, staff and offender safety." Duncan states that the Step-Down Program is "a cognitive program which includes pro-social goals and requires the offender to complete 7 workbooks in the Challenge Series." Duncan states that Greenhill refuses to participate in this Step-Down Program, and, therefore, he remains confined in a Special Management segregation assignment.

Duncan states that there are no communal televisions in the housing pods of the C-Building at Red Onion. She states that televisions are considered a privilege for offenders. According to Duncan, if Greenhill participated and met certain goals in the Challenge Series and remained infraction free, he could be considered for a pod job which would enable him to earn money to purchase a personal television.

-4-

## II. Analysis

Greenhill seeks preliminary injunctive relief requiring the defendants to provide him with "the means," i.e. a television, to visually observe Jum'ah services in his cell in segregation housing. "The standard for granting either a [temporary restraining order] or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (quoting *U.S. ex rel. $12,642.00 U.S. Currency v. Commonwealth of Va.*, 2003 WL 23710710, at *1 (E.D. Va. 2003) (not reported) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir. 1991); *Ry. Labor Execs. v. Wheeling Acquisition Corp.*, 736 F. Supp. 1397 (E.D. Va. 1990)). A plaintiff seeking preliminary injunctive relief is required to demonstrate that he is likely to succeed on the merits of his claim, that he is likely to suffer irreparable injury in the absence of an injunction, that the balance of equities tips in his favor and that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary remedy, never awarded as of right. *See Winter*, 555 U.S. at 24. The plaintiff bears the burden of establishing that the court should grant a preliminary injunction or temporary restraining order. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (citing *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)).

Greenhill argues that the defendants' failure to provide a television for his cell violates his rights under the First Amendment of the U.S. Constitution to freely exercise his religion. Courts have held that, although inmates lose some constitutional protections upon incarceration, they retain the right to freely worship while in prison. *See McManus v. Bass*, 2006 WL 753017, at *4 (E.D. Va. Mar. 22, 2006) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Bell v.*

*Wolfish*, 441 U.S. 520, 545 (1979)). The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. …" U.S. CONST. amend. 1. The Free Exercise Clause extends to prison inmates. *See O'Lone*, 482 U.S. at 348; *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). However, an inmate's religious rights must be evaluated within the context of his incarceration. The Supreme Court has long cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration[,]" *Procunier v. Martinez*, 416 U.S. 396, 405 (1974) (*overruled on other grounds* in *Thornburgh v. Abbott*, 490 U.S. 401 (1989)), and, therefore, the court "must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration[,]" *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir. 2006).

This deference is achieved by a rational basis test, under which the court considers four factors to determine if prison regulations are reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether the interest is "so remote as to render the policy arbitrary or irrational;" (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (3) what impact the desired accommodation would have on security staff, inmates and the allocation of limited prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." *Lovelace*, 472 F.3d at 200 (quoting *Turner v. Safley*, 482 U.S. 78, 89-92 (1987)). When applying these factors, the court must "respect the determinations of prison officials." *United*

*States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). The burden of proof under the *Turner* analysis is on the prisoner to disprove the validity of the prison regulation at issue. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

In order to establish a right under the Free Exercise Clause, Greenhill must make two threshold showings before turning to the rational basis test. First, he must show that he sincerely holds his religious beliefs. *See Wisconsin v. Yoder*, 406 U.S. 205, 214-16 (1972). Second, Greenhill must show that his claims are rooted in religious belief and are not "purely secular." *Yoder*, 406 U.S. at 215. If Greenhill can make these two threshold showings, he then must show that the free exercise of his religion is substantially burdened by the government policy or action at issue. *See Sherbert v. Verner*, 374 U.S. 398 (1963)

RLUIPA requires a "more searching standard of review … than the standard used in parallel constitutional claims: strict scrutiny instead of reasonableness." *Lovelace*, 472 F.3d at 186 (internal quotations omitted). Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … unless the government demonstrates that imposition of the burden … (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a) (West 2012). The term "government" as used in § 2000cc-1 is defined broadly to include: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law[.]" 42 U.S.C.A. § 2000cc-5(4)(A) (West 2012). RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled

by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A) (West 2012). "If a plaintiff produces prima facie evidence" of a RLUIPA violation, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C.A. § 2000cc-2(b) (West 2012).

As under the First Amendment, although prison officials may not question the truth of an inmate's belief, an inmate must demonstrate that the belief is sincerely held in order to establish a protected right under RLUIPA. *See McManus*, 2006 WL 753017, at *5 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Under both the First Amendment and RLUIPA, an inmate also must show that his right to the free exercise of his religion has been "substantially burdened." *McManus*, 2006 WL 753017, at *5 (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989)); *see also* 42 U.S.C. § 2000cc-1(a). RLUIPA does not define "substantial burden." However, the Fourth Circuit has held that a "substantial burden" on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of his religion and forfeiting governmental benefits on the one hand, and abandoning one of the precepts of his religion on the other hand. *See Lovelace*, 472 F.3d at 187 (internal quotation omitted); *see also Sherbert*, 374 U.S. at 404. Furthermore, this court previously has held that "[n]o substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his

-8-

or her religion." *Marron v. Miller*, 2014 WL 2879745, at *2 (W.D. Va. June 24, 2014) (citing *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007); *Living Water Church of God v. Charter Tp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007)).

The defendants do not contest Greenhill's assertion that he is a practicing Sufi Muslim who must observe Jum'ah every Friday, and there is nothing in the record before the court to suggest that Greenhill does not sincerely hold this religious belief. To be entitled to preliminary injunctive relief, however, Greenhill also must show that he is likely to prevail on his claim that the free exercise of his religious beliefs has been substantially burdened. Greenhill seeks preliminary injunctive relief ordering the defendants to provide him with "the means to visually access Jum'ah." It is important to note that Greenhill conceded in his Complaint that Red Onion broadcasts a video recording of Jum'ah services every Friday. He also conceded that segregation prisoners who own a television were able to view the broadcast of Jum'ah services. Greenhill also conceded that Red Onion prisoners may purchase a personal television from the prison commissary for use in their cells. Nonetheless, Greenhill asserted that, because he is indigent and cannot afford to purchase a television, the defendants have denied him the right to visually access Jum'ah. Thus, the facts alleged by Greenhill, himself, show that the government action complained of here merely makes Greenhill's exercise of his religious beliefs more expensive or difficult; the action does not pressure Greenhill to violate his religious beliefs or abandon one of the precepts of his religion.

I further note that the defendants also have produced evidence that it is Greenhill's own action in refusing to participate in the Step-Down Program that prevents him from being transferred from segregation to a housing unit where he could receive a prison job and earn money to purchase a television. Also, the

defendants have produced evidence that Greenhill may freely practice his religion in his segregation cell in other ways, including requesting a visit from a chaplain to participate in private worship.

Based on the above reasons, I find that it is unlikely that Greenhill can demonstrate that the defendants' actions have placed a substantial burden on the free exercise of his religious beliefs. That being the case, I also find that he has failed to show that it is likely he will prevail on the merits of either his First Amendment claim or his RLUIPA claim. Therefore, I will recommend that the court deny Greenhill's request for preliminary injunctive relief.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. It is unlikely that Greenhill can demonstrate that the defendants' actions placed a substantial burden on his right to freely exercise his religious beliefs;
2. Therefore, Greenhill has failed to show that he will likely prevail on his First Amendment claim or his RLUIPA claim; and
3. The court should deny Greenhill's request for entry of preliminary injunctive relief.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend the court deny the Motions requesting preliminary injunctive relief.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: March 20, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE