# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ALFONZA HARDY GREENHILL,** | )<br>) |
| Plaintiff, | ) Case No. 7:16CV00068<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **HAROLD W. CLARKE, ET AL.,** | ) By: James P. Jones<br>) United States District Judge |
| Defendants. | ) |

*Alfonza Hardy Greenhill, Pro Se Plaintiff; Laura H. Cahill and Mary Grace Miller, Office of the Attorney General, Richmond, Virginia, for Defendants.*

The plaintiff, Alfonza Hardy Greenhill, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. Greenhill asserts that restrictive living conditions in long-term administrative segregation interfere with his ability to exercise his sincere religious beliefs related to group religious services, wearing a four-inch beard, and maintaining a religious diet. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted in part and denied in part.

I.

Greenhill is serving a fifteen-year prison term in the custody of the Virginia Department of Corrections ("VDOC") for convictions including assault, robbery,

and firearms offenses. He is currently assigned to Red Onion State Prison ("Red Onion"). Red Onion and its sister facility, Wallens Ridge State Prison ("Wallens Ridge"), house all "Level S" inmates, reserved for inmates who must be managed in a segregation setting.[1] Once in this status, a Level S inmate may participate in the Segregation Reduction Step-Down Program, designed to "create a pathway for offenders to step-down from Security level S to lower security levels in a manner that maintains public, staff and offender safety." Mem. Supp. Mot. Summ. J., Duncan Aff. Enclosure B, Operating Procedure ("OP") 830.A(I), ECF No. 26-1.

The Step Down Program is goal-oriented. When inmates succeed in completing the established goals in each stage of the procedure, they are rewarded by moving to the next step and earning its additional privileges. An inmate's status on a step-down pathway is formally reviewed every ninety days by the Institutional Classification Authority ("ICA"). At the most restrictive level of the inmate's assigned pathway, he cannot attend group religious services, possess a television in his cell, or hold a job. If he completes certain goals of the Step Down Program, however, he may be assigned to less restrictive steps and earn back privileges, including the ability to have a paid job and use a personal television in his cell.

---

[1] According to the current VDOC operating procedure for security level classification available online at http://www.vadoc.virginia.gov/about/procedures, inmates are classified to Level S based on various qualifying history of serious prison conduct, including violence and gang activity

After Greenhill arrived at Red Onion in February 2013, the ICA recommended him for assignment to the Structured Living Phase 1 pod. In this status under OP 830.A, inmates can have jobs and use a television in their cells, among other privileges. Greenhill refused to participate in the Step Down Program at that time, and as a result, he was assigned to the most restrictive step of the Special Management pathway, known as SM-0 status. In May 2014 Greenhill was assigned to the Secure Integration Pod Phase 1, where the privileges again included job possibilities and possessing a television in one's cell. In September 2015 however, Greenhill was returned to SM-0 status after he had incurred ten institutional disciplinary charges during the previous two years.

Greenhill states that he has been a Muslim since 2000. He asserts that his Muslim faith requires him to participate in a weekly Jum'ah service with at least three other Muslims. He also contends that he cannot perform Jum'ah alone or with Red Onion's Christian chaplain. As a Level S inmate, Greenhill cannot physically attend Jum'ah group services. The prison broadcasts a videotaped version of Jum'ah that Level S inmates with personal televisions may watch once they have progressed beyond SM-0 status. Greenhill does not own a television and is classified at SM-0 status, so he cannot use a television or work to earn money toward purchasing one. No communal televisions are made available to Level S.

Greenhill also states that his Muslim faith requires him to grow and keep his beard trimmed to the length of his fist, or about four inches long. The VDOC's grooming policy, OP 864.1, requires inmates to keep their beards trimmed to no longer than one-quarter inch. Since at least October 2015 Greenhill has worn his beard longer than allowed under OP 864.1. All violators of this policy must remain in segregated confinement unless they meet qualifications for transfer to the Grooming Policy Violators Housing Unit ("VHU"), a unit designated for special management of male inmates not in compliance with OP 864.1. At the time of this lawsuit, for eligibility to seek transfer to the VHU, Greenhill was required to complete the *Challenge Series*, serve a minimum of six months in segregation, and remain free of disciplinary charges for three to six months.

Greenhill receives the Common Fare diet that is comprised of halal foods consistent with his Muslim dietary beliefs. At mealtimes, officers place his Common Fare meal tray in the security box attached to his door so that he can retrieve the meal through the tray slot. Greenhill contends that the security box contaminates his meals, because at other times, he must place dirty clothes, shoes, and used cleaning materials in the box.

Greenhill filed this lawsuit in early 2016 against three VDOC officials: Harold Clarke, Director; A. David Robinson, Chief of Operations; and Earl Barksdale, Warden of Red Onion. The suit seeks monetary damages and

-4-

permanent injunctive relief.² He contends that the defendants should adjust prison policies to accommodate his religious practices by allowing him to view the weekly Jum'ah service on a communal television in the pod area, in a nearby classroom or in person; by permitting him to maintain a four-inch-long beard without remaining in segregation; and by serving Common Fare meals in a manner that does not contaminate the serving trays. The defendants have moved for summary judgment, and Greenhill has responded, making the motion ripe for disposition.

II.

A. Standard of Review.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the

---

² I have already twice denied Greenhill's separate motions for preliminary injunction. *See Greenhill v. Clarke*, No. 7:16CV00068, 2017 WL 1929669 (W.D. Va. May 10, 2017) (Jum'ah), *aff'd, Greenhill v. Clarke*, 699 F. App'x 280 (4th Cir. 2017) (unpublished); *Greenhill v. Clarke*, No. 7:16CV00068, 2016 WL 1179225 (W.D. Va. Mar. 23, 2016), *aff'd in part regarding the grooming policy and halal food service claims, remanded as to Jum'ah claim*, No. 16-6542, 2016 WL 7414198 (4th Cir. Dec. 22, 2016) (unpublished).

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* I must draw all reasonable inferences from the facts in favor of Greenhill, the nonmoving party. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

B. First Amendment Claims.

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987). To prove a violation of this right, an inmate must first state facts sufficient to show that the challenged prison regulation substantially burdens his right to free exercise of a sincerely held religious belief. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). In this context, "a substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (internal quotation marks and citation omitted).

Because "courts are ill equipped to deal with the increasingly urgent problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), they must defer to the expertise of prison officials in crafting policies addressing those problems, such as security, discipline, and efficient use of limited resources; therefore, a prison regulation that substantially burdens inmates' religious practices is, nevertheless, "valid if it is reasonably related to legitimate

penological interests." *Id.* at 199 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). This determination turns on a four-factor test: (1) "whether there is a valid, rational connection between the prison regulation" and the asserted government interest; (2) whether Greenhill was "deprived of all forms of religious exercise or whether [he was] able to participate in other observances of [his] faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) "whether there exist any obvious, easy alternatives to the challenged regulation." *Id.* at 200 (internal quotation marks and citation omitted).

The defendants do not challenge the sincerity of Greenhill's Muslim beliefs. Rather, they argue that Greenhill's First Amendment claims fail under the four-factor *Turner* test and/or the substantial burden requirement. I agree.

Given the violent, disruptive histories of the inmates classified to Level S, Red Onion officials clearly have legitimate security interests that are furthered by keeping Level S inmates physically separate from each other and from other inmates. *See Morrison v. Garraghty*, 239 F.3d 648, 660 (4th Cir. 2001) ("Without question, prison safety and security is a legitimate, indeed compelling, penological interest."). The defendants also assert that the VDOC has a legitimate penological interest in the success of the Step Down Program to maintain order, motivate inmates to reduce disruptive and dangerous behaviors, and promote the successful

-7-

re-entry of a Level S inmate post-incarceration. They contend that current restrictions on SM-0 inmates' privileges, including the television ban, are rationally related to and further this interest by maintaining incentives for inmates to participate in the Step-Down Program. I so find.

Moreover, I also find that Greenhill can practice his religious beliefs in many ways other than group service participation. As consistent with his religious beliefs, he may engage in personal study of religious texts and prayer in his cell, he receives Common Fare meals, and he may grow his beard. Finally, I find that Greenhill fails to demonstrate any readily available alternative means to provide the requested Jum'ah access and accomplish the purposes of the step-down program to the same extent without additional financial and staffing costs. Thus, I conclude that the defendants are entitled to summary judgment on Greenhill's First Amendment claim that SM-0 regulations violate his free exercise right related to group religious services.

Similarly, the VDOC's quarter-inch beard limit meets the factors of the *Turner* test. This court has held that the current VDOC grooming policy on beard length is reasonably related to legitimate prison security interests. *See Bayadi v. Clarke*, No. 7:15CV00618, 2017 WL 4248522, at \*8 (W.D. Va. Sept. 25, 2017) (Moon, J.). In the *Bayadi* case, the court found that:

> Bayadi does not show that it is unreasonable for the VDOC to prohibit inmates from growing beards of indeterminate length while housed in

> general population. There is a "valid, rational connection" between regulating beard length and defendants' explanations about security and sanitation. *See Lovelace*, 472 F.3d at 182, 190 (stating "emphatically that any substantive explanation offered by the prison must be viewed with due deference"). . . . [T]he government has legitimate penological interests in identification of inmates, preventing the spread of contraband, and inmate hygiene. There is a rational connection between OP 864.1's beard length restrictions and these interests. . . . [I]t is Bayadi's burden to disprove the reasonableness of these regulations — and he has not done so.

*Id.* I find the reasoning in *Bayadi* to be persuasive. As such, I also find that the defendants in this case have satisfied the rational relationship aspect of the *Turner* standard. Greenhill is able to maintain his beard at the desired length and to practice other aspects of his religious beliefs. Finally, he fails to show any easy alternatives to address to the same extent the security concerns presented by his four-inch beard. Therefore, I will grant summary judgment for the defendants on Greenhill's First Amendment claim regarding his beard.

I also find no merit to Greenhill's First Amendment claim that current tray box procedures violate his religious dietary practices. The defendants' undisputed evidence is that each inmate is responsible for keeping his tray box clean as part of his cell. An inmate receives two sponges for cell cleaning, replaced as needed upon request. Once each week, he is also provided cleaning chemicals. Greenhill complains that this cleaning system does not meet Muslim standards that require any item touching food to be rinsed three times in clean water. He proposes that

officials should use portable tray boxes and maintain one to be used only for halal meals.

The defendants' refusal to follow Greenhill's portable box proposal does not violate the First Amendment. First, Greenhill fails to show any substantial burden on his religious dietary beliefs. The two sponges provided allow Greenhill to reserve one sponge to clean his tray box after every transaction, while using the other sponge for cleaning other parts of his cell. Prison practices do not substantially burden an inmate's rights if they merely make his "religious exercise more expensive or difficult," but fail to pressure the adherent to violate his religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007). Second, the two sponge practice meets the *Turner* test factors. It clearly furthers the prison's interests in keeping costs low and teaching inmates responsibility. Greenhill may comply with his dietary beliefs by eating his Common Fare meals and keeping his tray box clean himself, and he has presented no easy alternatives that would both accommodate his concerns over cleanliness and further prison interests to a similar extent. Finding no genuine material fact in dispute, I will grant the defendants' Motion for Summary Judgment on this claim.

Finally, I will grant the defendants' motion as to Greenhill's complaint that the defendants' failure to provide a communal television for Level S inmates

violates OP 830.A, the Step Down procedure.[3] State officials' failure to abide by state procedural regulations is not a federal due process issue, and is, therefore, not actionable under § 1983. *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *see also United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (where a government agency is not constitutionally required to adopt certain regulations, a violation of those regulations, without more, does not "raise any constitutional questions").

## C. RLUIPA Claims.

RLUIPA provides federal statutory protection of prisoners' religious exercise under a stricter legal standard: "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (unpublished) (citing 42 U.S.C. § 2000cc-1(a)). A RLUIPA analysis consists of two steps. First, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious

---

[3] Appendix G to OP 830.A indicates that inmates at all levels of the SM pathway will be provided with a television to watch education and religious programming. Mem. Supp. Mot. Summ. J., Duncan Aff. Enclosure B, ECF No. 26-1.

-11-

exercise." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). For purposes of a RLUIPA claim, "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace*, 472 F.3d at 187 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). Only if the inmate proves that there is a substantial burden on his religious practice, does "the burden shift[] to the government to prove its policy furthers a compelling governmental interest by the least restrictive means." *Incumaa*, 791 F.3d at 525.

Greenhill raises all three of his claims under RLUIPA as well as the First Amendment. All of Greenhill's claims under RLUIPA fail to the extent that he seeks monetary damages, because such relief is not available under RLUIPA. *See, e.g., Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (finding damages not recoverable against defendants in their official capacities under RLUIPA); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (finding no RLUIPA claim for damages available against defendants in their individual capacities). In addition, I conclude that Greenhill's third claim, regarding tray box cleanliness, fails under the substantial burden facet of the RLUIPA standard, just as in the First Amendment analysis. Therefore, I will grant summary judgment for the defendants on the tray box claim and on all claims for monetary damages.

The defendants argue that they are entitled to summary judgment on Greenhill's beard length claim under a prior decision of this court, *Coleman v. Jabe*, No. 7:11CV518, 2014 WL 2040097 (W.D. Va. May 16, 2014) (upholding VDOC grooming policy under RLUIPA). The defendants also argue for summary judgment on Greenhill's claim concerning his inability as a Level S inmate to participate in Jum'ah services, based on their contention that he fails to show how the VDOC policies at issue have substantially burdened his religious practice.

The defendants contend that prison officials have provided an avenue for Level S inmates who are Muslim to participate in Jum'ah by participating in the Step Down Program to achieve greater privilege levels where they can work to earn money to buy a television, and thereby participate in the Jum'ah broadcast. They also argue that Level S inmates who also refuse to comply with the VDOC grooming standards have the potential for transfer to the VHU.

Greenhill states, however, that "[u]ntil [he] complies with the VDOC's beard length limitation (which is something he has vowed to Allah never to do), he will not be permitted to attain institutional employment" to purchase a television. Compl. 3, ECF No. 1. He also asserts that his failure to comply with the beard grooming requirements will prevent him from progressing in the Step Down Program as he must do to become eligible for transfer to the VHU. *See* Greenhill Decl. 3, ECF No. 31. Greenhill also points out the absence of evidence in the

-13-

Case 7:16-cv-00068-JPJ-RSB   Document 53   Filed 12/15/17   Page 13 of 15   Pageid#: 471

record that even if he were transferred to the VHU, he would be able to participate in Jum'ah. The defendants have not addressed these facts and arguments, and I find them critical to any determination of Greenhill's remaining RLUIPA claims. I also note that the *Bayadi* decision, issued after the defendants filed their motion, denied summary judgment for prison officials on these same claims, in contravention of the defendants' reliance here on the *Coleman* decision. For these reasons, I will deny the defendants' motion as to Greenhill's RLUIPA claims regarding the beard length policy and the policies affecting his ability to participate in Jum'ah. I will, however, grant the defendants an opportunity to submit a supplemental motion for summary judgment.

III.

In accordance with the foregoing, it is **ORDERED** that the defendants' Motion for Summary Judgment (ECF No. 25) is GRANTED IN PART AND DENIED IN PART. The motion is DENIED as to Greenhill's claims under RLUIPA against the defendants in their official capacities for injunctive relief regarding beard length and Jum'ah participation and the motion is GRANTED as to all other claims. The defendants are granted leave to file a supplemental motion for summary judgment within 28 days of the date of entry of this Opinion and Order or the matter will be set for trial.

ENTER: December 15, 2017

/s/  James P. Jones
United States District Judge