## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

ALFONZA HARDY GREENHILL

        Plaintiff,

   v.

HAROLD W. CLARKE, DIRECTOR
VIRGINIA DEPARTMENT OF
CORRECTIONS; A. DAVID ROBINSON,
CHIEF OF CORRECTIONS OPERATIONS;
EARL BARKSDALE, WARDEN - RED
ONION STATE PRISON; JEFFREY KISER,
WARDEN - RED ONION STATE PRISON;
ASSISTANT WARDEN FULLER – RED
ONION STATE PRISON; LARRY          Civil Action No. 716cv00068
COLLINS, UNIT MANAGER; AIMEE
DUNCAN, UNIT MANAGER; WALTER
SWEENEY, UNIT MANAGER; DANIEL R.
THEIBEN, CHAPLAIN; JOHN DOE 1;
JOHN DOE 2; JOHN DOE 3; JOHN DOE 4;
JOHN DOE 5,  INDIVIDUALLY AND IN
THEIR OFFICIAL CAPACITIES;
GRACEINSIDE f/k/a Chaplain Service Prison
Ministry of Virginia, Inc., f/k/a, Chaplain
Service of the Churches of Virginia, f/k/a
Interdenominational Religious Work
Foundation,

        Defendants.

_____/

## AMENDED COMPLAINT

### I.    JURISDICTION AND VENUE

1.    This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation

under color of state law, of rights secured by the Constitution of the United States.  The Court has

original jurisdiction under 28 U.S.C. § 1331 because each cause of action set forth in this

Complaint arises under the Constitution and laws of the United States.  In addition, this Court has

original jurisdiction under 28 U.S.C. § 1343(a)(3) because Plaintiff Greenhill seeks to redress the

deprivation under color of a State law rights, privileges, and/or immunities secured by the Constitution of the United States as well as by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

2.      Plaintiff Greenhill seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff Greenhill's claim for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284, as well as Federal Rule of Civil Procedure 65.

3.      The Western District of Virginia is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II.      PLAINTIFF

4.      Plaintiff Alfonza Hardy Greenhill is and was at all times mentioned herein a devout, practicing Muslim, as well as a prisoner of the State of Virginia in the custody of the Virginia Department of Corrections confined in Red Onion State Prison, in Pound, Virginia.

## III.      DEFENDANTS

5.      Defendant Harold W. Clarke is the Director of the State of Virginia Department of Corrections.  He is and at all relevant times has been legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Red Onion State Prison. He is therefore responsible for the conditions and terms of Plaintiff Greenhill's confinement at Red Onion State Prison.

6.      Defendant A. David Robinson is the Chief of Corrections Operations of the State of Virginia Department of Corrections.  He is and at all relevant times has been responsible for all Departmental Operating Procedures that govern each institution under the jurisdiction of the Virginia Department of Corrections, including Red Onion State Prison.  He is therefore responsible for the conditions and terms of Plaintiff Greenhill's confinement at Red Onion State Prison.

7.      Defendant Earl Barksdale was the Warden of Red Onion State Prison from January 2015 until December 2016.  As Warden, Defendant Barksdale was also the Facility Unit Head of Red Onion, in which role he had ultimate authority to approve – or to delegate authority to approve – security-level classifications of Red Onion prisoners.  He also had responsibility for the welfare of all the inmates at Red Onion, including Plaintiff Greenhill.  Defendant Jeffrey Kiser is the Warden of Red Onion State Prison, and has held that position since December 2016 and previously held the role of Assistant Warden of Red Onion State Prison.  As Warden, Defendant Kiser is also the Facility Unit Head of Red Onion, in which role he has ultimate authority to approve – or to delegate authority to approve – security-level classifications of Red Onion prisoners.  He also has responsibility for the welfare of all the inmates at Red Onion, including Plaintiff Greenhill.

8.      Defendant Fuller is the Assistant Warden of Red Onion State Prison, and has held that position since 2019.  Upon information and belief, as Assistant Warden, Defendant Fuller shares responsibility for the welfare of all the inmates at Red Onion, including Plaintiff Greenhill, and is known to inmates as an extension of the Warden.  Defendant Fuller also has the authority to grant Plaintiff Greenhill access to Jum'ah services.

9.      Defendant Larry Collins is a Unit Manager at Red Onion State Prison and, upon information and belief, has held that position from 2015 to 2016.  Upon information and belief, Defendant Collins shared responsibility for the welfare of the inmates in the "C" building of Red Onion and was known to inmates as the "mini Warden" of the "C" building.

10.     Defendant Aimee Duncan is a Unit Manager at Red Onion State Prison and, upon information and belief, has held that position from 2016 to 2017.  Upon information and belief, Defendant Duncan shares responsibility for the welfare of the inmates in the "C" building of Red Onion and is known to inmates as the "mini Warden" of the "C" building.

11.     Defendant Walter Sweeney is a Unit Manager at Red Onion State Prison and, upon information and belief, has held that position since February 2020.  Upon information and belief, Defendant Sweeney shares responsibility for the welfare of the inmates in the "D" building of Red Onion and is known to inmates as the "mini Warden" of the "D" building.

12.     Defendant Daniel R. Theiben is a Restricted Housing Chaplain for GraceInside, a non-profit organization that receives about one-half of its funding from the Virginia Department of Corrections. Under color of law, and at all relevant times, part of Defendant Theiben's duties includes providing chaplain services to inmates at Red Onion State Prison, including Plaintiff Greenhill.  Defendant Theiben uses a Virginia Department of Corrections e-mail address to conduct his duties: Daniel.theiben@vadoc.virginia.gov.

13.     Defendant GraceInside is a non-profit organization and, according to Defendant GraceInside's website as of May 27, 2020, is "Virginia's prison chaplain service organization since 1920." Defendant GraceInside employs chaplains to provide chaplaincy services to Virginia Department of Corrections inmates, including Plaintiff Greenhill.  Defendant GraceInside receives about one-half of its funding from the Virginia Department of Corrections, conducts its duties under color of law, and upon information and belief, each of Defendant GraceInside's chaplains uses a Virginia Department of Corrections e-mail address in the exercise of their duties.  Upon information and belief Defendant GraceInside is also formerly known as Chaplain Service Prison Ministry of Virginia, Inc., Chaplain Service of the Churches of Virginia, and Interdenominational Religious Work Foundation.

14.     Unless otherwise specified, Defendants Clarke, Robinson, Barksdale, Kiser, Fuller, Collins, Duncan, and Sweeney are collectively referred to herein as "the VDOC Defendants."

4

15.     Each defendant is sued individually and in his or her official capacity.  At all times mentioned in this complaint each defendant acted under color of state law, specifically, under color of the law of the Commonwealth of Virginia.

## IV.     FACTS

16.     Plaintiff Greenhill is a devout, practicing Muslim, sincere in his Islamic beliefs. Plaintiff Greenhill practices Islam in its Sufi context.

17.     Sufism is a genre of Islam that emphasizes a strict adherence, outwardly and inwardly, to the Sunnah (ways, habits, traditions) of the Prophet Muhammed (peach be upon him), his Sahabah (companions) and Sufi Masters.

18.     Plaintiff Greenhill has been a Muslim since 2000.

19.     Plaintiff Greenhill's religion, Islam, obligates him to be present, bodily or visually, at the weekly Islamic gathering known as Jum'ah.  Jum'ah mean, in English, "a gathering."

20.     Jum'ah takes place, world-wide, every Friday.

21.     Jum'ah consists of a two-part Khutbah (sermon) and a ritual Salah (ritual prayer) of two rakat (cycles).  For Sufi Muslims, it is also obligatory to give or share a meal after Jum'ah.

22.     There is an entire Surah (chapter) of the Holy Qur'an entitled, "al-Jum'ah" (Surah 62), and it is one of the places wherein the commandment to attend Jum'ah can be found.

23.     Jum'ah is a central tenet of Islam; any adult Muslim male who is absent therefrom incurs a terrible sin and is deprived of the opportunity to acquire many blessings.

24.     Plaintiff Greenhill has been confined within facilities operated by the Virginia Department of Corrections from 2008 to the present.

25.     Plaintiff Greenhill was a security level "segregation" (hereinafter level <u>S</u>) prisoner living in level S housing ("C" building) of Red Onion State Prison (ROSP) from 2008 until 2012.

In level S̲ housing, Plaintiff Greenhill was confined to his cell for 23 hours a day and was only released therefrom to be escorted, in handcuffs and shackles, to an outside man-cage (the same size as his cell – approximately 12 ft. x. 7 ft.), shower, medical building, etc.  As a level S̲ prisoner, Plaintiff Greenhill was not permitted to be bodily present at Jum'ah.

26.     In 2012, Plaintiff Greenhill was transferred to Wallens Ridge State Prison ("D" building).  While at Wallens Ridge State Prison, Plaintiff Greenhill was subject to the same conditions as level S housing in ROSP.  Plaintiff Greenhill was not permitted to be bodily present at Jum'ah.  In 2013, Plaintiff Greenhill was transferred back to ROSP in level S housing ("D" building).  Plaintiff Greenhill was subject to the same conditions as experienced in ROSP from 2008 until 2012.

27.     In 2015, Plaintiff Greenhill was transferred to the "C" building of ROSP, where he remained until February 2020.  Plaintiff Greenhill was subject to the same conditions as experienced in the "D" building of ROSP from 2013-2015.

28.     Plaintiff Greenhill has been housed in a Re-Entry Unit since February 14, 2020.  In the Re-Entry Unit, Plaintiff Greenhill is confined alone to his cell for 23 hours per day and is only released to be escorted, in handcuffs and shackles, to an outside man-cage (the same size as his cell – approximately 12 ft. x 7 ft.), to shower or to receive medical care.  In the Re-Entry unit, Plaintiff Greenhill is not permitted to be bodily present at Jum'ah.

29.     ROSP broadcasts a videotape of Jum'ah every Friday on a closed-circuit television system within the facility.  ROSP has done this for many years.  The videotape of Jum'ah is aired to ROSP prisoners in the general prisoner population and level S̲ housing.  The only level S̲ prisoners who may view the videotape of Jum'ah are those who own a personal television.

6

30.     As for those level S prisoners who do not own a personal television, they have no way to visually access, and participate in, Jum'ah.

31.     A personal television costs approximately $212 to ROSP inmates and can be purchased from the facility commissary.

32.     Plaintiff Greenhill is a financially indigent prisoner and cannot afford a personal television.

33.     Because Plaintiff Greenhill did not own and could not afford to purchase a personal television during his confinement in level S housing at ROSP, Plaintiff Greenhill was precluded from visually observing or participating in Jum'ah throughout his confinement in level S housing.

34.     Plaintiff Greenhill is still not able to fully observe or participate in Jum'ah.

35.     Precluding Plaintiff Greenhill from visually observing or participating in Jum'ah placed a substantial burden upon Plaintiff Greenhill's religious exercise of Jum'ah, a central tenet of Islam.

36.     Precluding Plaintiff Greenhill from visually accessing or participating in Jum'ah placed a substantial burden upon Plaintiff Greenhill's religious exercise of religion.

37.     Virginia Department of Corrections Operating Procedure 841.3 "Offender Religious Programs," signed by Defendant A. David Robinson, mandates that the only Virginia Department of Corrections (VDOC) Segregation prisoners who may visually access and participate in religious programs are those who own a personal television.  Operating Procedure 841.3 is enforced at all VDOC prisons.

38.     Plaintiff Greenhill submitted an Informal Complaint form, on October 1, 2015, addressed to Defendants Harold W. Clarke and A. David Robinson, regarding his inability to visually access Jum'ah by way of the Jum'ah videos aired at ROSP, and that his visual access to

Jum'ah has been conditioned upon the purchase and ownership of a personal television that he cannot afford (see exhibit A).  Plaintiff Greenhill was sent a response dated October 13, 2015 denying Plaintiff Greenhill a personal television by which he can visually access Jum'ah and fulfil his religions Islamic obligation (see exhibit A).  In his appeal to that response, Plaintiff Greenhill proposed, as an alternative to a personal television, that he be allowed to bodily attend Jum'ah, or that communal television be placed in all level S pods at ROSP, and that Plaintiff Greenhill could visually access, and participate in, Jum'ah thereby (see exhibits B and C).

39.     VDOC officials operating under the VDOC Defendants' direction and control maintained, throughout the exhaustion process and throughout Plaintiff Greenhill's confinement in level S housing that Plaintiff Greenhill could not visually access Jum'ah unless he first sought and obtained institutional employment and earn enough money to purchase a $212 television (see exhibits A, B, and C).

40.     However, for years, Plaintiff Greenhill was regarded by VDOC officials as "Special Management 0" (SM0).  As SM0, Plaintiff Greenhill was not permitted to attain institutional employment.  Also, Plaintiff Greenhill, for religious reasons, refused to comply with the VDOC's prior quarter-inch length limitation on prisoner beards.

41.     Plaintiff Greenhill's religion, Islam, obligates him to grow his beard to, and maintain it at, the length of his fist.  Plaintiff Greenhill's first is four inches in length.  It is noted in a rigorously authenticated hadith (report of tradition) that the Prophet Muhammad (peace be upon him) said:

> "Differ from the Polytheists; let your beard grow and shave your mustache."
> (Bukhari Collection of Hadith)

That command had been defined by a close companion of the Prophet and foundational jurist of Islamic Law, Ibn 'Umar:

When Ibn 'Umar made his hajj (pilgrimage) and 'Umrah (lesser pilgrimage), he would hold his beard in his fist, and whatever exceeded his fist he would cutoff."

(Bukhari and Muslim Collections of Hadith)

42.    Prior to 1999, the VDOC had no policy forbidding beards.  In 1999, the VDOC implemented a policy forbidding prisoners to have beards of any length.  In 2013, the VDOC began to permit beards not exceeding the length of a quarter-inch (see exhibit D, section IV.F.c.).

43.    Plaintiff Greenhill entered the VDOC in 2007 and was not permitted to grow his board to, and maintain it at, the length of four inches as he is obligated by his religion, Islam, for 12 years.  Not allowing Plaintiff Greenhill to grow his beard to, and maintain it at, the length of four inches, as his religion, Islam, obligates him to; placed a substantial burden on Plaintiff Greenhill's religious exercise.  Just five days after briefing was completed before the Fourth Circuit in this case, the policy was changed in April 2019, effective June 2019, to allow for  "freedom in personal grooming."  The policy, as amended in June 2019 by Defendant Robinson, specifically requires that it shall be reviewed annually and re-written no more than three years after its effective date.

44.    In obedience to his religion, Islam, Plaintiff Greenhill was not in compliance with the VDOC's grooming policy for the vast majority of his incarceration, Operating Procedure 864.1 "Offender Grooming and Hygiene" (O.P. 864.1) (see exhibit D).  Plaintiff Greenhill's beard was approximately two inches in length when he filed this suit.  He intends to maintain it at four inches until the day of his death.

45.    As long as Plaintiff Greenhill refused to comply with O.P. 864.1, he was not allowed into the VDOC's general prisoner population; he remained locked in a cell 23 hours a day 5 days a week, and 24 hours a day 2 days a week; he was deprived of the opportunity to bodily attend Jum'ah; he was prohibited from congregating with fellow Muslim prisoners for obligatory prayer

and study classes; he was not allowed to attain institutional employment; he will not be allowed the recreational activities such as basketball and soccer; he will not be able to earn any good-time credits.  For all of the aforementioned reasons, Plaintiff Greenhill's religious exercise of fulfilling his Islamic commandment to grow his beard to, and maintain it at, the length of four inches was substantially burdened for 11 years.

46.     As a result, for years, the VDOC Defendants forced Plaintiff Greenhill to choose between his religious command to grow and maintain a four-inch beard and his need to participate in Jum'ah.  He could not fulfill his religious command to visually access Jum'ah unless he obtained employment and purchased a television, and he could not obtain employment unless he broke his religious command to grow a four-inch by shaving.

47.     Plaintiff Greenhill continued to maintain a four-inch beard until, shortly after the Fourth Circuit's December 6, 2019 decision, he was misled by a VDOC employee who made false promises to induce Plaintiff Greenhill into shaving his beard.  To wit, Plaintiff Greenhill was promised improved conditions of confinement if he shaved his beard.  This promise was false because VDOC had previously lifted its ban on four-inch beards.

48.     Plaintiff Greenhill intends to never shave it any shorter than four inches until his death.

49.     Plaintiff Greenhill has never been convicted of concealing contraband in his beard.

50.     Plaintiff Greenhill's four-inch beard does not and has never posed any security threat to employees, inmates, or staff at ROSP.

51.     VDOC and the VDOC Defendants have at all relevant times allowed female inmates to maintain shoulder-length hair, that is, hair substantially longer than four-inches.

52.     At no time relevant here have VDOC or the VDOC Defendants ever imposed any grooming or length requirements on armpit or pubic hair.

53.     Plaintiff Greenhill submitted an Informal Complaint on October 10, 2015, addressed to Defendants Harold W. Clarke and A. David Robinson, regarding the substantial burden placed upon his Islamic religious exercise of growing his beard to, and maintaining it at, the length of four inches (see exhibit E).  In his appeal, Plaintiff Greenhill requested a revision of O.P. 864.4 that would allow him to grow his beard to, and maintain it at, the length of four inches and thereby remove the substantial burden currently upon his exercise of religion.  That request was denied (see exhibit F).

54.     From the time he was transferred to ROSP until February 2020, Plaintiff Greenhill was classified by the VDOC as a level S prisoner and was housed in level S housing at ROSP. ROSP's C-building is designated exclusively for level S housing.

55.     In level S housing, prisoners are locked in their cells 23 hours a day.

56.     The entirety of C-building at ROSP serves as the housing unit for the VDOC's level S prisoners.  There are six pods in C-building: C-1, C-2, C-3, C-4, C-5, C-6.  C-1 and C-6 pods both have 44 cells, and all other pods in C-building have 22 cells each.

57.     From the time Plaintiff Greenhill was placed in section S housing at ROSP until February 2020, the VDOC Defendants took the position that Plaintiff Greenhill was housed in a segregation unity not as a punishment for security reasons.

58.     Throughout that time, the VDOC Defendants and VDOC took the position that if Plaintiff Greenhill progressed through the "step down" program he would eventually cease to be a security risk and he could either obtain a job that would allow him to purchase a television to

11

visually access Jum'ah or to be housed in a unit where he could either visually access Jum'ah through a communal television or attend Jum'ah physically.

59.     From the time Plaintiff Greenhill entered VSOP until June 2019, Plaintiff Greenhill could not participate in the "step down" program unless he cut or shaved his beard to one-half inch or shorter, as required by ROSP grooming regulations, in violation of his religious faith.

60.     Because Plaintiff Greenhill's religious mandate to grow a four-inch beard prohibited him from shaving his beard to one-quarter inch or shorter, Plaintiff Greenhill could not participate in the "step down" program before June 2019, unless he violated his religious tenets by shaving or cutting his beard down to one-half inch or less.

61.     This means that the VDOC Defendants punished Plaintiff Greenhill for exercising his religious obligation to keep a four-inch beard by keeping him in administrative isolation—spending at least 23 hours a day in a tiny cell alone—for more than a decade.

62.     Moreover, Plaintiff Greenhill objected to being forced to participate in the "step down" program because it would entail indoctrination inconsistent with his beliefs as a devout, practicing Muslim.

63.     The VDOC Defendants' and VDOC's position is that level S housing is not used as a punishment but for security purposes.

64.     There are many ways an inmate can demonstrate he is not a security threat other than participating in the "step down" program, and therefore, the VDOC Defendants' decision to make participation in the "step down" program the only path to being removed from level S housing is not rationally related to a legitimate governmental interest.

65.     Plaintiff Greenhill has not posed a legitimate security threat while at ROSP such that his housing in level S housing was required for his safety or the safety of others.

12

66.     Plaintiff Greenhill has not been a legitimate security threat throughout his time at ROSP such that his housing in level <u>S</u> housing was required for his safety or the safety of others.

67.     VDOC and the VDOC Defendants considered Plaintiff Greenhill's refusal to participate in the "step down" program a failure to comply with an order, and further considered this infraction itself sufficient to keep him in level <u>S</u> housing until February 2020.

68.     After exhausting his administrative appeals, Plaintiff Greenhill filed this action in February 2016, outlining the VDOC Defendants' and VDOC's violations of his religious rights under RLUIPA and the First Amendment.

69.     Although Plaintiff Greenhill's Complaint put the VDOC Defendants fully on notice of their continuing violations of his protected religious rights, the VDOC Defendants continued violating his protected religious rights as set forth above.

70.     The VDOC Defendants asserted that Plaintiff Greenhill's visual accessing of Jum'ah through a closed-circuit television was a privilege.

71.     The VDOC Defendants asserted that they were withholding the ability to visually access Jum'ah services from Plaintiff Greenhill to coax him into participating in the "step down" program at ROSP.

72.     On December 6, 2019, the Fourth Circuit Court of Appeals issued a decision in this case, *Greenhill v. Clarke*, 944 F.3d 243 (4th Cir. 2019).

73.     The Fourth Circuit's December 6, 2019 decision made clear that the actions of Defendants Clarke and Robinson infringed on Plaintiff Greenhill's religious freedom as protected by the First Amendment and RLUIPA.

74.     The Fourth Circuit's December 6, 2019 decision held that the justifications that VDOC and Defendants Clarke and Robinson had provided for denying Plaintiff Greenhill's religious rights were insufficient and remanded the case to this Court for further proceedings.

75.     The Fourth Circuit's December 6, 2019 decision rejected Defendants Clarke and Robinson's attempt to characterize Plaintiff Greenhill's religious mandate to participate in Jum'ah each week "privilege" that could be withdrawn if Plaintiff Greenhill did not participate in a "step down" program" promulgated at ROSP.

76.     The Fourth Circuit's December 6, 2019 decision held that "placing such religious exercise in the category of *privilege* to be earned is fundamentally inconsistent with the *right* to religious exercise that RLUIPA guarantees to prisoners."  944 F.3d at 250 (emphasis in original).

77.     The Fourth Circuit's December 6, 2019 decision further held that "VDOC's grooming policy also imposed a substantial burden on Greenhill's religious exercise under RLUIPA."  *Id.*

78.     The Fourth Circuit's December 6, 2019 decision further observed that Defendants Clarke and Robinson's and VDOC's frequent changes to its grooming policy governing beards "suggest[] that a less restrictive means was available to accommodate Greenhill's religious exercise."  *Id.* at 252.

79.     The Fourth Circuit's December 6, 2019 decision also rejects Defendant Clarke and Robinson's justifications for denying Plaintiff Greenhill's rights under the First Amendment.  The court held that "VDOC's justification for preventing Greenhill from viewing Jum'ah was essentially that access to religious services was a privilege for SM-0 inmates to earn" which again failed to take account of the fact that Plaintiff Greenhill's religious observance is a right.  *Id.* at 253.  It similarly reiterated that VDOC's shifting grooming policies suggested that Defendants and

VDOC "may not have" had even a rational basis for requiring Plaintiff Greenhill to cut his beard to one-half inch or less.  *Id.*

80.     Notwithstanding this clear ruling by the Court of Appeals that rejected Defendants Clarke and Robinson's justifications for denying Plaintiff Greenhill's religious rights, the VDOC Defendants kept Plaintiff Greenhill in level <u>S</u> housing for two months after the Fourth Circuit's December 6, 2019 ruling and continued to deny him the ability to bodily or visually access Jum'ah during this time.

81.     Additionally, on or about November 2019, the VDOC Defendants issued a memorandum announcing a policy that made it impossible to practice Ta'lim, which is the Islamic practice of study and education of the Qu'ran and the hadith (teachings of the prophet Muhammad). Upon information and belief, this policy did not prohibit any other religious practices, including those of the Christian faith.

82.     The VDOC pays Defendant GraceInside to conduct chaplaincy services in ROSP, including to Plaintiff Greenhill.  Defendant GraceInside employs Defendant Theiben to conduct these chaplaincy services.

83.     Upon information and belief, the chaplaincy services provided by Defendant GraceInside is the only available chaplaincy service available to Plaintiff Greenhill while in ROSP.

84.     Defendant Theiben has provided chaplaincy services to Plaintiff Greenhill and other people at RSOP through VDOC's contract with GraceInside.

85.     Upon information and belief, Defendant Theiben is an evangelical Christian.

86.     Despite Plaintiff Greenhill's request, Defendant Theiben has refused to provide any religious materials other than Christian materials.

87.     In the provision of chaplaincy services for the VDOC, Defendant Theiben has attempted to persuade Plaintiff Greenhill to abandon his Muslim faith, has denounced the prophet Mohammad, the Qu'ran, and the hadith, and has refused to say a Muslim prayer despite Plaintiff Greenhill's request.

88.     When Plaintiff Greenhill sought religious counseling from Defendant Theiben, Defendant Theiben told Plaintiff Greenhill that "Islam is a lie."

89.     Plaintiff Greenhill was finally moved out of level S housing in February 2020 into the Re-Entry Unit to prepare for the end of his prison term in 2021.

90.     Although Plaintiff Greenhill is no longer living in Level S Housing, the harms to Plaintiff Greenhill's religious rights outlined in this Amended Complaint are capable of repetition yet evading review unless this Court awards Plaintiff Greenhill declaratory and injunctive relief to prohibit future violations.

## V.     LEGAL CLAIMS.

### COUNT I: VIOLATION OF RELIGIOUS LAND USE
### AND INSTITUTIONALIZED PERSONS ACT (RLUIPA)

91.     Plaintiff realleges and incorporates by reference paragraphs 1 through 90.

92.     By denying Plaintiff Greenhill visual access to Jum'ah, Defendant Harold W. Clark has substantially burdened and continues to substantially burden Plaintiff Greenhill's Islamic religious exercise of Jum'ah, in violation of Plaintiff Greenhill's rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). That denial has caused and is causing Plaintiff Greenhill injury to rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

93.     By denying Plaintiff Greenhill visual access to Jum'ah, Defendant A. David Robinson substantially burdened Plaintiff Greenhill's Islamic religious exercise of Jum'ah, in

violation of Plaintiff Greenhill's rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).  That denial caused Plaintiff Greenhill injury to his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

94.      By prohibiting Plaintiff Greenhill from growing his beard to, and maintaining it at, the length of four inches as his religion, Islam, obligates him to, Defendant Harold W. Clarke substantially burdened Plaintiff Greenhill's religious exercise of growing his beard to, and maintaining it at, the length of four inches in violation of Plaintiff Greenhill's rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).  That prohibition caused Plaintiff Greenhill injury to his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

## COUNT II: VIOLATION OF FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

95.      Plaintiff realleges and incorporates by reference paragraphs 1 through 94.

96.      By prohibiting Plaintiff Greenhill from growing his beard to, and maintain it at, the length of four inches as his religion, Islam, obligates him to, Defendants denied Plaintiff Greenhill the free exercise of his religion, in violation of Plaintiff Greenhill's rights under the First Amendment to the United States Constitution.  That denial caused Plaintiff Greenhill injury to his First Amendment rights.  As a result of this violation, they left Plaintiff Greenhill in administrative segregation in level S housing for more than a decade, leaving him substantially isolated.

97.      By denying Plaintiff Greenhill visual access to Jum'ah, a central tenet of Plaintiff Greenhill's Islamic religion, Defendant Harold W. Clarke denied Plaintiff Greenhill the free exercise of his religion, in violation of Plaintiff Greenhill's rights under the First Amendment to the United States Constitution.   That denial caused Plaintiff Greenhill injury to his First Amendments rights.

98.     By denying Plaintiff Greenhill visual access to Jum'ah, a central tenet of Plaintiff Greenhill's Islamic religion, Defendant A. David Robinson denied Plaintiff Greenhill the free exercise of his religion, in violation of Plaintiff Greenhill's rights under the First Amendment to the United States Constitution.   That denial caused Plaintiff Greenhill injury to his First Amendment rights.

### COUNT III: VIOLATION OF PLAINTIFF GREENHILL'S RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983)

99.     Plaintiff realleges and incorporates by reference paragraphs 1 through 98.

100.    At all relevant times, each Defendant acted under color of State law, that is, under authority delegated to them by the Commonwealth of Virginia, with respect to Plaintiff Greenhill.

101.    Therefore, the RLUIPA and First Amendment violations set forth above give rise to a private right of action by Plaintiff Greenhill against Defendants under 42 U.S.C. § 1983.

## VI.    PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgment:

102.    Granting Plaintiff Greenhill a declaration that the acts and omission described herein violate his rights under the Constitution and laws of the United States, and

103.    A preliminary and permanent injunction ordering defendants to accommodate Plaintiff Greenhill with the means to visually access Jum'ah or allow him bodily access thereto; a preliminary and permanent injunction ordering defendants to allow Plaintiff Greenhill to grow his beard to, and maintain it at, the length of four inches without incurring disciplinary measures as a result;, and

104.    Granting Plaintiff Greenhill compensatory damages in the amount in an amount to be determined by a jury (but in all events exceeding the sum of $75,000, exclusive of interest and costs), against defendants Harold W. Clarke, Earl Barksdale, and Jeffrey Kiser, jointly and severally; punitive damages in an amounts to be determined by the jury separately against each Defendant.

105.    Plaintiff Greenhill also seeks a jury trial on all issues triable by injury,

106.    Plaintiff Greenhill also seeks recovery of his costs and attorneys' fees in this suit under 42 U.S.C. § 1988, and

107.    Any additional relief this court deems just, proper, and equitable.

Date:   July 8, 2020                        Respectfully submitted,

                                            /s/ Kevin J. O'Brien_____
                                            Kathryn S. Lehman *(admitted Pro Hac Vice)*
                                            Kevin J. O'Brien (VSB No. 78886)
                                            **KING & SPALDING LLP**
                                            1180 Peachtree Street, NE
                                            Atlanta, GA 30309
                                            Phone: (404) 572-4600
                                            klehman@kslaw.com
                                            kobrien@kslaw.com

                                            Scott M. Edson *(admitted Pro Hac Vice)*
                                            **KING & SPALDING LLP**
                                            1700 Pennsylvania Avenue, NW, Suite 200
                                            Washington, DC 20006
                                            Phone: (202) 737-0500
                                            sedson@kslaw.com

                                            Jarred Lee Reiling *(admitted Pro Hac Vice)*
                                            **KING & SPALDING LLP**
                                            353 N. Clark Street, 12th Floor
                                            Chicago, IL 60653
                                            Phone: 312-764-6912
                                            jreiling@kslaw.com

                                            *Attorneys for Plaintiff*
                                            *Alfonza Hardy Greenhill*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 2020, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all counsel of record.

Laura H. Cahill, AAG, (VSB No. 86328)
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 786-5630
Email: lcahill@oag.state.va.us

*Counsel for VDOC Defendants*

*/s/ Kevin J. O'Brien_____*
Kevin J. O'Brien (VSB No. 78886)

*Attorney for Plaintiff*
*Alfonza Hardy Greenhill*

21